IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MATTIE LOU WILLIAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-0088-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Mattie Lou Williams ("Plaintiff" or "Williams") originally applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1382 *et seq.*, on April 24, 2007. (Tr. 81-84). After being denied, Williams timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on March 13, 2009. (Tr. 11-20). Williams subsequently petitioned for review to the Appeals Council who rejected review of William's case on December 3, 2010. (Tr. 1-5). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Williams seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion  of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

>in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

>(1) Is the person presently unemployed?
>
>(2) Is the person's impairment(s) severe?
>
>(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
>(4) Is the person unable to perform his or her former occupation?
>
>(5) Is the person unable to perform any other work within the economy?
>
>An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Williams, age 50 at the time of the ALJ's decision, completed the ninth grade. (Tr. 54-55.) In the relevant past, Williams performed work as a cashier, waitress, telephone

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

service operator, and telemarketer. (Tr. 26-28, 104-06, 112-19).[5] Williams alleges her disability began January 1, 2002. (Tr. 81). Under the regulations, when a claimant files an SSI application, the earliest month in which she can receive benefits is the month following the month in which her application was filed. *See* 20 C.F.R.§ 416.335. Thus, the relevant time period for determination of Williams' disability is between April 24, 2007, the date of Plaintiff's application, (Tr. 81-84) and March 13, 2009, the date of the ALJ's decision. (Tr. 11-20). Williams testified that she can not work due to her diabetes and thyroid goiter. She reports "I can't sit for long because I swell. I require rest and elevating legs and feet to reduce swelling. While on blood thinners, I can't be around anything that may cause me to bleed . . . can't stand for a long period. (Tr. 104).

      The ALJ found that Williams has severe impairments of diabetes mellitus Type II, status post thyroid surgery with goiter and hypertension, but that Williams did not have an impairment or a combination of impairments that met or medically equal one of the listed impairments. The ALJ concluded from the entire record that Williams "has the residual functional capacity to perform the full range of light work." (Tr. 16). Light work involves lifting no more than 20 pounds at a time (with frequent lifting or carrying of objects weighing up to 10 pounds), and standing or walking, off and on, for a total of approximately six hours total and standing or walking for about two hours total in an eight-hour day. *See* 20 C.F.R. § 416.967(a); SSR 83-10.

---

[5] The Defendant admits that the jobs of service operator and telephone sales person did not qualify as "past relevant work" under Social Security regulations because the earnings record for 1999 and 2000 do not support a finding that these jobs were substantial gainful activity.

## V.   Issues

Williams raises three issues for judicial review:

(1)  Whether the ALJ's finding of Past Relevant Work are not based on substantial evidence.  (*See* Doc. 10 at 5).

(2)  Whether the ALJ's Residual Functional Capacity Findings are not based on substantial evidence.  (*See* Doc. 10 at 7).

(3)  Whether the ALJ erred in failing to apply SSR Ruling 02-1p?  (*See* Doc. 10 at 9).

## VI.   Discussion

**I. Substantial evidence supports the ALJ's finding of past relevant work.**

Plaintiff complains that the ALJ erred in including the jobs of service operator and telephone sales person as "past relevant work" because Plaintiff's earnings records do not support a finding that these jobs were substantial gainful activity.  The Commissioner agrees that the ALJ improperly included the jobs of service operator and telephone sales person as past relevant work, but argues that the error is harmless because the ALJ also found that Plaintiff could perform her past light work as a cashier and a waitress.  (Tr. 19).  The Eleventh Circuit has recognized that the harmless error standard applies in Social Security cases.  *See Diorio v. Heckler,* 721 F. 2d 726, 728 (11th Cir.1983) (recognizing that the ALJ's erroneous statements of fact regarding Plaintiff's age were "harmless errors" where the ALJ applied the correct legal standard.)  Indeed, the Supreme Court has held that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders,* 556 U.S. 396, 129

S. Ct. 1696, 1706 (2009) citing *Nelson v. Apfel,* 131 F. 3d 1228, 1236 (7th Cir. 1997). *See, also, Hovey v. Astrue,* 2010 WL 5093311 at 13 n. 19 (M.D. Ala. Dec. 8, 2010) (recognizing that consideration of disability examiner's opinion, who is not a medical source, was harmless error where ALJ did not credit the opinion over any medical opinion.)  Plaintiff has made no showing as to how the erroneous finding that her "past relevant work" included work as a cashier and a waitress proved harmful to her.  Rather, the ALJ's additional finding that plaintiff could perform her past light work as a cashier and waitress persuades the Court that the erroneous factual finding is indeed harmless error.

### II. The ALJ had substantial evidence to make her residual functional capacity determination.

Next, Plaintiff argues that the ALJ incorrectly found that she had the residual functional capacity ("RFC") to perform light work which included her past relevant work as a cashier and a waitress.  (Tr. 16-19).  Specifically Plaintiff argues that this finding is not based on substantial evidence because the ALJ did not credit the opinion of an unidentified treating physician dated July 24, 2007.  (Tr. 418).  She further argues that the decision of the State agency single decision maker, Ophelia Collins, does not support the ALJ's conclusion about Plaintiff's RFC.

A residual functional capacity assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite their limitations.  *See* 20 C.F.R. § 404.1545(a)(1) (2010).  An RFC assessment will be made based on all relevant evidence in the case record.  *Id.*; *Lewis v. Callahan*, 125 F.3d at 1440.  At an ALJ hearing,

"the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c) (2010).  The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010).  The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources.  *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988).  (The ALJ is not required to order a consultative examination unless the record establishes it is necessary to render a fair decision).  The ALJ's finding must be supported by substantial evidence.  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005)(citations omitted).

The unidentified Baptist Family Medicine doctor completed a check-the-box style form which stated that Plaintiff could lift up to 20 pounds, which is consistent with light work,[6] but also stated that Plaintiff could only stand and walk for a total of two hours (combined) during an eight-hour day.  (Tr. 418). Plaintiff argues that this doctor's opinion supports a finding that she was limited to sedentary work.  (Pl. Br. at 7).  [7]

---

[6] Light work involves lifting no more than 20 pounds at a time (with frequent lifting or carrying of objects weighing up to 10 pounds), and standing or walking, off and on, for a total of approximately six hours in an eight-hour day.  *See* 20 C.F.R. § 416.967(b);Social Security Ruling (SSR) 83-10, 1983 WL 31251 at *5-6.

[7] Sedentary work involves lifting no more than 10 pounds at a time (and occasionally lifting or carrying articles like docket files, ledgers, and small tools), and sitting for about six hours total and standing or walking for about two hours total in an eight-hour day.  *See* 20 C.F.R. § 416.967 (a); SSR 83-10, 1983 WL 31251, at *5.

The Eleventh Circuit has established that the opinion of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" "'[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* .357 F.3d at 1241 (11th Cir. 2004)(citing *Lewis,* 125 F.3d at1440). In *Lewis*, the Eleventh Circuit also established that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician and that the failure to do so constitutes reversible error. 125 F.3d at 1440. Furthermore, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. *Holley v. Chater*, 931 F.Supp. 840, 849 (S.D. Fla. 1996) (citing *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)).

However, the simple fact that a treating physician's opinion is included in the evidence does not require the ALJ to follow it but rather the opinion may be given less weight or dismissed entirely. *Washington v. Barnhart*, 175 F. Supp. 2d 1340, 1346 (M.D. Ala. 2001) (finding that the ALJ properly considered the treating physician's medical opinions based on the objective medical evidence in the record as a whole it was "entirely reasonable" when the treating physician's records and notes were inconsistent). When an ALJ chooses to reject the opinions of the claimant's treating physicians there needs to be sufficient detail set forth by the ALJ for the court to conduct a meaningful review. *Pettaway v. Astrue*, Case No. 06-00880-WS-B, 2008 WL 1836738, at *14 (S.D. Ala. Apr.

21, 2008) (finding that the ALJ erred in rejecting the opinions of a treating physician because insufficient detail was set forth by the ALJ for the reviewing court to be able to conduct any kind of meaningful analysis).

The ALJ identified "good cause" to discount the unidentified doctor's conclusory opinion. (Tr. 19, 418). Indeed, the ALJ found that the opinion was not consistent with Plaintiff's treatment records at Baptist Family Medicine and with Plaintiff's other medical records. (Tr. 17-19). The records show from at least January, 2003, that Plaintiff has received treatment for diabetes mellitus, an enlarged thyroid (goiter) and obesity. (Tr. 208-10, 236). Her records include treatment at the Baptist Family Medicine Clinic for these same and other medical issues. (Tr. 269-99, 305-08, 358-72, 386, 394-408). The records contain minimal examination findings but show that plaintiff was not compliant with her diabetes treatment (Tr. 285, 364) and also was not compliant in taking her coumadin. (Tr. 285, 359).

Furthermore, in mid-April 2007 Joseph Mangini, M.D. of Baptist Family Medicine Clinic signed a letter stating that Plaintiff had diabetes mellitus and hyperthyroidism, and that she took the blood thinner Coumadin. Dr. Mangini opined that Plaintiff could not perform work-related tasks involving sharp objects because of her increased risk of bleeding, but did not identify any other work restrictions. (Tr. 338). In April 2008 a nuclear medicine thyroid uptake and scan of Plaintiff's thyroid showed a colloid cyst, thyroid adenoma, and thyroid carcinoma. (Tr. 486-87). Plaintiff subsequently had surgery to remove the goiter. (Tr. 482).

Other medical records show that Plaintiff reported difficulty sleeping in June and July 2008. (Tr. 434, 436). In August 2008, she acknowledged that she was doing "OK", but requested additional imaging and testing of her thyroid; her care provider noted that an additional MRI or thyroid tests were not indicated. She also reported that her leg bothered her and that she had a "knot" on her knee. (Tr. 428). X-rays of her left knee showed degenerative joint disease and patellar tendon calcifications. (Tr. 474-80). In September, 2008, X-rays showed multiple phleboliths within her pelvis and a possible kidney stone within her right ureter. (Tr. 469-70).

After careful consideration of the Plaintiff's medical records, the Court finds that the ALJ correctly found "the opinion offered by the [unidentified] physician inconsistent with the medical treatment notes from Baptist, inconsistent given the lack of recent treatment from Baptist, and inconsistent with the overall medical evidence appearing in the record." (Tr. 19). Indeed, the records indicate Plaintiff doing "OK" following thyroid surgery and no additional testing needed. (Tr. 428). Also, records show that Plaintiff was not compliant with her diabetes treatment (Tr. 285, 364) and not compliant in taking her coumadin. (Tr. 285, 359). Finally, the only work restriction identified by Dr. Joseph Mangini, M.D. of Baptist Family Medicine was Plaintiff's inability to perform work related tasks involving sharp objects due to her increased risk of bleeding. (Tr.338). Thus, the court finds "good cause" exists for the ALJ to reject the unidentified doctor's opinions.

"Good cause" also exists for the ALJ to reject the unidentified doctor's conclusions because the doctor failed to identify any evidence supporting his stated

opinions. (Tr. 418-420). *See* 20 C.F.R § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Phillips,* 357 F.3d at 1240-41 (good cause exists not to assign substantial weight to a treating physician's opinion when the opinion is conclusory.) Accordingly, the court concludes "good cause" exists for the ALJ to reject the conclusory opinion from the unidentified doctor.

  The Plaintiff argues, however, that even if the ALJ's conclusion was correct concerning the unidentified doctor's opinion and Plaintiff's condition during the time period surrounding that examination, her medical profile changed the following year sometime around her 50th birthday in May, 2008. Specifically, Plaintiff points to a thyroid scan done on April 7, 2008 which showed a marked enlargement of the left lobe with a differential diagnoses of adenoma and carcinoma. (Tr. 486). In June 2008 she underwent a left thyroid lobectomy for a goiter. (Tr. 482). In August 2008 X-rays revealed degenerative joint disease and patellar tendon calcifications of the left knee. (Tr. 477, 479). In September 2008, when Plaintiff was status post cholecystectomy, abdominal X-rays revealed multiple phleoboliths within the pelvis and a possible renal calculus within the right ureter or superimposed within the bowel. (Tr. 469). Plaintiff, however, fails to explain to the Court how these impairments created functional limitations beyond those incorporated into the ALJ's residual functional capacity finding. To establish a disability, a claimant must show not only impairments, but functional limitations related to those impairments. *See Ellison v. Barnhart,* 355 F.3d at 1276 . Accordingly, the court concludes this argument fails as well.

Plaintiff also argues that the unidentified doctor's opinion was reasonably consistent with the RFC which the State agency single decision maker, Ophelia Collins prepared upon the instruction of a medical consultant. She opines that Plaintiff could perform a reduced range of light work, with no climbing ladders, ropes or scaffolds. (Tr. 409-417). This opinion, however, is due little weight in this case since it is not the opinion of a medical source. *See, Hovey,* 2010 WL 5093311 at *13 n. 19 ("The ALJ erred by relying on the opinion of the disability examiner, as she is not a medical source.") (Citation omitted). Thus, the Court concludes this argument fails as well. Accordingly, based on the evidence as a whole the Court concludes that the ALJ's determination of the RFC is supported by substantial evidence. *See Phillips,* 357 F.3d at 1232 (quoting 20 C.F.R.§ 404.1520 (e)(the ALJ will "assess and make a finding about the [claimant's] residual functional capacity based on all the relevant medical and other evidence.")**.**

### III. The ALJ correctly applied SSR Ruling 02-1p?

Plaintiff argues that the ALJ failed to consider her obesity in evaluating her residual functional capacity pursuant to Social Security Rule (SSR) 02-1p governing the consideration of obesity in Plaintiff's RFC. SSR 02-1p "does not mandate a particular mode of analysis" but merely directs an ALJ to consider the claimant's obesity in combination with other impairments. *See Bledsoe v. Barnhart,* 165 F. App'x 408, 411-12 (6th Cir. 2006). The ALJ considered Plaintiff's obesity in this case because the ALJ specifically noted evidence of her obesity in the residual functional capacity assessment. (Tr. 17, 18).

Plaintiff further argues that the ALJ should have found her disabled as a result of her obesity. Plaintiff has not shown that her obesity created functional limitations beyond those incorporated into the ALJ's residual functional capacity finding. To establish a disability, a claimant must show not only impairments, but functional limitations related to those impairments. *See Ellison,* 355 F.3d at 1276. Indeed, while Plaintiff's care providers assessed her obesity, they did not specify any obesity-related limitations in functioning. Accordingly, this argument fails.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 21st day of December, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE